Juli E. Farris, Esq. (SBN: 141716)
KELLER ROHRBACK L.L.P.
1129 State Street, Suite 8
Santa Barbara, California 93101
(805) 456-1496; Fax (805) 456-1497
jfarris@kellerrohrback.com

Lynn L. Sarko, Esq. (Pro Hac Vice Forthcoming)
KELLER ROHRBACK L.L.P
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
(206) 623-1900; Fax (206) 623-3384
lsarko@kellerrohrback.com

Laurie B. Ashton, Esq. (Pro Hac Vice Forthcoming)
Gary A. Gotto, Esq. (Pro Hac Vice Forthcoming)
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
(602) 248-0088; Fax (602) 248-2822
lashton@kellerrohrback.com
ggotto@kellerrohrback.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| THE REPUBLIC OF THE MARSHALL ISLANDS, a non-nuclear-weapon State party to Treaty on the Non Proliferation of Nuclear Weapons,<br><br>                     Plaintiff,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA, PRESIDENT BARACK OBAMA, THE PRESIDENT OF THE UNITED STATES OF AMERICA; THE DEPARTMENT OF DEFENSE; SECRETARY CHARLES HAGEL, THE SECRETARY OF DEFENSE; THE DEPARTMENT OF ENERGY; SECRETARY ERNEST MONIZ, THE SECRETARY OF ENERGY; AND THE NATIONAL NUCLEAR SECURITY ADMINISTRATION,<br><br>                    Defendants. | No. _____<br><br>**COMPLAINT FOR BREACH OF THE TREATY ON THE NON-PROLIFERATION OF NUCLEAR WEAPONS**<br><br>Judge: |

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     PARTIES ........................................................................................................... 3

III.    JURISDICTION AND VENUE ......................................................................... 6

        A.      Jurisdiction ............................................................................................ 6

        B.      Venue ..................................................................................................... 7

IV.     BACKGROUND ............................................................................................... 8

        A.      The Creation, Testing and Use of Nuclear Weapons before the Treaty ............... 8

        B.      The Treaty and its Obligations ............................................................. 9

                1.      The Grand Bargain ..................................................................... 9

                2.      The International Court of Justice Interpretation of the NPT ................ 10

                3.      The Treaty Review Conferences ............................................. 12

        C.      Good Faith is an Objective Legal Duty ............................................. 13

V.      THE U.S. IS IN CONTINUING BREACH OF THE TREATY ................................... 14

        A.      The U.S. is in Continuing Breach of its Obligation to Pursue Negotiations
                in Good Faith on Effective Measures Relating to the Cessation of the
                Nuclear Arms Race at an Early Date .................................................. 14

        B.      The U.S. is in Continuing Breach of its Obligation to Pursue Negotiations
                in Good Faith on Effective Measures Relating to Nuclear Disarmament ......... 17

        C.      The U.S. Breach of the Treaty Deprives the Plaintiff Nation of the Benefit
                of Its Bargain .................................................................................... 24

VI.     CAUSES OF ACTION .................................................................................... 25

COUNT I:  DECLARATORY JUDGMENT ................................................................ 25

COUNT II:  DECLARATORY JUDGMENT ............................................................... 26

COUNT III:  INJUNCTIVE RELIEF ........................................................................... 27

VII.    PRAYER FOR RELIEF .................................................................................. 27

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

1

2

## I.   INTRODUCTION

3      1.      This is an action against the United States of America (or "U.S.") and certain of its

4  agencies, brought by a sovereign nation who is a party to T*he Treaty on the Non-Proliferation of*

5  *Nuclear Weapons*, dated July 1, 1968, 21 U.S.T. 483, 729 U.N.T.S. 161 (hereinafter the "Treaty" or the

6  "NPT").  The underlying claim, described in more detail herein, is that the U.S., including by and

7  through its agencies, breached and continues to breach certain obligations under the Treaty.

8      2.      Under the Supremacy Clause of the U.S. Constitution, treaties are part of the "supreme

9  Law of the Land" and the judicial power extends to all cases arising under treaties, and to controversies

10 in which the United States is a party.  U.S. Const. art. VI, cl. 2.

11     3.      The Republic of the Marshall Islands ("Marshall Islands" or "Plaintiff Nation") herein

12 asks the Court to interpret the Treaty, determine whether the U.S. is in compliance with it, and order the

13 U.S. to comply with its obligations under it.

14     4.      As the Supreme Court confirmed, in *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 353-54

15 (2006):  "If treaties are to be given effect as federal law under our legal system, determining their

16 meaning as a matter of federal law 'is emphatically the province and duty of the judicial department,'

17 headed by the 'one supreme Court' established by the Constitution."  *Id.* (quoting *Marbury v. Madison*,

18 5 U.S. (1 Cranch) 137, 177 (1803)).

19     5.      While it is novel for a foreign sovereign to consent to the jurisdiction of U.S. federal

20 courts over a treaty dispute, it is in no way novel for the U.S. federal courts to interpret a treaty and/or to

21 find a treaty violation.  Indeed, in the first fifty years of U.S. constitutional history, between 1789 and

22 1838, the Supreme Court decided nineteen cases in which the U.S. government was a party, at least one

23

24

25

26

27

28

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

party raised a claim or defense on the basis of a treaty, and the Court decided the merits of that claim or defense.[1]

6.   Article VI of the Treaty states, in its entirety, as follows:

Each of the Parties to the Treaty undertakes to pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date and to nuclear disarmament, and on a treaty on general and complete disarmament under strict and effective international control.[2]

7.   The obligation of a party to an agreement to negotiate in good faith is an objective legal obligation, supported by inviolate legal precedent, and is an obligation routinely judged by federal courts.  In the context of Article VI of the Treaty, good faith imposes a standard of objective reasonableness."[3]  Moreover, "[a] significant practical consequence of the 'good faith' principle is that a party which committed itself in good faith to a course of conduct . . . would be estopped from acting inconsistently with its commitment. . . ."[4]

8.   Plaintiff Nation alleges herein that the U.S. is in breach of its obligations under Article VI of the Treaty.  As set forth herein, analysts have stated, including in public forums, publications and/or in sworn testimony that the U.S. is in breach of the Article VI obligations.  The U.S., on the other hand, regularly alleges in speeches and documents that it is in compliance with the Treaty.  The dispute is clear.

9.   In 1996 the International Court of Justice (or, "ICJ") interpreted the Treaty and held that "[t]here exists an obligation to pursue in good faith and bring to a conclusion negotiations leading to

---

[1] David Sloss, *Judicial Deference to Executive Branch Treaty Interpretations:  A Historical Perspective*, 62 N.Y.U. ANN. SURV. AM. L. 497-523 (2007) (citations omitted) (The U.S. government won fewer than twenty percent of these cases.).

[2] Treaty on the Non-Proliferation of Nuclear Weapons art. VI, July 1, 1968, 21 U.S.T. 483, 729 U.N.T.S. 161, *available at* http://www.un.org/disarmament/WMD/Nuclear/NPTtext.shtml.

[3] LORI F. DAMROSCH et al., INTERNATIONAL LAW: CASES AND MATERIALS 1195 (4th ed. 2001).

[4] *Id.* at 157.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

nuclear disarmament in all its aspects under strict and effective international control."[5]   The U.S., however, does not consent to the compulsory jurisdiction of the ICJ, and does not consider its rulings binding on the U.S.

10.     The harm to the Plaintiff Nation caused by the U.S. breach of the Treaty is real.  As a result of the U.S. continuation of the nuclear arms race and breach of its duty to negotiate in good faith for disarmament, warning times for nuclear strikes have shrunk to virtually zero seconds because the U.S. keeps approximately 1,000 nuclear weapons on high alert status.

11.     When the Treaty was opened for signatures in 1968, five countries possessed nuclear weapons and today, nine countries possess them, as set forth herein.  Current studies indicate that even a regional nuclear war between India and Pakistan, neither of which possessed nuclear weapons when the Treaty entered into force, would likely result in two billion deaths worldwide as a result of nuclear famine.

12.     As summed up by two former presidents, the harm is real and cannot be ignored without grave consequences:

> Every man, woman and child lives under a nuclear sword of Damocles, hanging by the slenderest of threads, capable of being cut at any moment by accident, or miscalculation, or by madness.  The weapons of war must be abolished before they abolish us.

President John F. Kennedy, 1961.

> "A nuclear war cannot be won and must never be fought."

President Ronald Reagan, 1984.

## II.  PARTIES

13.     The Republic of the Marshall Islands is a non-nuclear-weapon state party to the Treaty. The Marshall Islands acceded to the Treaty as a party on or about January 30, 1995, and has continued

---

[5] *Legality of the Threat or Use of Nuclear Weapons, Advisory Opinion, 1996 I.C.J. Reports*, p. 226, 105(2)F, at 267  (July 8, 1996).

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

to be a party to it since that time. While cessation of the nuclear arms race and nuclear disarmament are vitally important objectives to the entire international community, the Marshall Islands has a particular awareness of the dire consequences of nuclear weapons. The Marshall Islands was the location of repeated nuclear weapons testing from 1946 to 1958, during the time that the international community had placed it under the trusteeship of the U.S. During those 12 years, approximately 67 nuclear weapons, of varying explosive power, were detonated in the Marshall Islands, at varying distances from human populations. According to the September 3, 2012 Report of Calin Georgescu, a Special Rapporteur to the UN Human Rights Council, the devastating adverse impact on the Marshall Islands of those nuclear substances and wastes continues to this day.[6] The Special Rapporteur concludes that "the harm suffered by the Marshallese people has resulted in an increased global understanding of the movement of radionuclides through marine and terrestrial environments," and urges the international community to "learn from the Marshallese experience with nuclear contamination, particularly the…understanding of the relationship between radioiodine and thyroid cancer." To be clear, this Complaint is *not directed* at compensation for such testing or its continuous effects, nor at the continuing testing in the Marshall Islands by the U.S. of its nuclear weapons delivery systems. This background is provided to explain in part the Marshall Islands' first-hand experience of the long term lethal effects of nuclear weapons, as well as its interest as a party to the NPT, in enforcement of the obligations under Article VI of the NPT, as set forth more fully herein. The Marshall Islands is thousands of miles from the United States, with limited access to air transportation to the United States. Travel for this case to the west coast of the United States would save the Marshall Islands significant time, energy and money as compared to travel anywhere else in the United States.

---

[6] U.N. Rep. of the Special Rapporteur of the implications for human rights of the environmentally sound management and disposal of hazardous substances and wastes, 21st Sess., Mar. 27-Mar. 30, Apr. 24- Apr. 27, 2012, U.N. Doc. /HRC/21/48/Add.1; GE.12-16376.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

14.     Defendant THE UNITED STATES OF AMERICA is a party to the Treaty.

15.     Defendant BARACK OBAMA is the President of the United States of America, and is named solely in his official capacity.

16.     Defendant THE DEPARTMENT OF DEFENSE ("DOD" or "DoD") is an agency of the U.S. and is charged with coordinating and supervising all agencies and functions of the government relating directly to national security and the military.  The organization and functions of the DOD are set forth in Title 10 of the United States Code.  Part of what the DOD does is maintain an ever more powerful and effective nuclear arsenal and prepare to field U.S. nuclear forces for decades to come.

17.     Defendant CHARLES HAGEL is the current Secretary of Defense, and is named solely in his official capacity. The Secretary of Defense exercises authority, direction and control over the DOD. The Secretary of Defense is a member of the President's Cabinet and of the National Security Council. 50 U.S.C. § 3021.

18.     Defendant THE DEPARTMENT OF ENERGY ("DOE") is an agency of the U.S. and it maintains and enhances U.S. nuclear weapons capabilities.

19.     Defendant ERNEST MONIZ is the current Secretary of Energy, and is named solely in his official capacity.  The Secretary of Energy is responsible for all matters of direct concern to the DOE, including maintaining, enhancing and building U.S. nuclear weapons. The Secretary of Energy exercises authority, direction and control over the DOE.  The Secretary of Energy is a member of the President's Cabinet and of the National Security Council.  50 U.S.C. § 3021.

20.     Defendant THE NATIONAL NUCLEAR SECURITY ADMINISTRATION ("NNSA") is a DOE agency.  NNSA is responsible for the management of U.S. nuclear weapons, and part of its mission is to enhance U.S. nuclear weapons and contract for new nuclear production operations and facilities, and newer, stronger and more reliable nuclear weapons of mass destruction, and their delivery systems.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

21.     The DOD, the DOE and the NNSA are referred to herein collectively as the "Nuclear Weapons Agencies."

## III. JURISDICTION AND VENUE

### A.     Jurisdiction

22.     This Court has jurisdiction over this matter pursuant to Article III of the Constitution and pursuant to 28 U.S.C. § 1331.  This action arises under a treaty and the U.S. is a party.

23.     This is an action seeking relief other than money damages.  Plaintiff Nation seeks: (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 with respect to (a) the interpretation of the Treaty, and (b) whether the United States is in breach of the Treaty; and (ii) an injunction directing the U.S. take all steps necessary to comply with its obligations under Article VI of the Treaty within one year of the Judgment, including by calling for and convening negotiations for nuclear disarmament in all its aspects.

24.     Any sovereign immunity that may have previously applied to any or all of the defendants in this action was waived in 1976 under the second sentence of 5 U.S.C. § 702, which provides as follows:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

25.     The authority to resolve this claim is textually committed to the judiciary, not to the political branches of the U.S. government.  Specifically, the Constitution implicitly commits this authority to the judiciary, when it mandates in Article VI that "[t]his constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land. . . ."  Const. Art. VI, cl. 2.  The Constitution further commits this issue to the judiciary when it mandates in Article III that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

the United States, and Treaties made, or which shall be made, under their Authority; . . . [and to] Controversies to which the United States shall be a Party."  Const. Art. III § 2, cl. 1.

26.     As the Supreme Court has confirmed, not only do federal courts "have the authority to construe international treaties and executive agreements," they "cannot shirk this responsibility merely because [the] decision may have significant political overtones."  *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 106 S. Ct. 2860, 2866 (1986).  Resolution of the claims in this case "demands careful examination of the textual, structural, and historical evidence [to be] put forward by the parties . . . . This is what courts do," and they do so even when the claims are against current members of the Executive.  *See Zivotofsky v. Sec'y of State*, 132 S. Ct. 1421, 1430 (2012).  In addition, the federal courts are empowered to determine whether the Executive, or its Administration, is in breach of a treaty.  *E.g.*, *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006).  It is the federal courts, and not the Executive, who have the final authority on both treaty interpretation and whether the U.S. is in breach of its treaty obligations.

**B.     Venue**

27.     Venue is proper in this District under 28 U.S.C. § 1391(e)(1), which provides, in pertinent part, that "[a] civil action in which a defendant is . . . an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which . . . a defendant in the action resides."  Defendant, the United States of America, is deemed to reside in this district because it is subject to this Court's personal jurisdiction in this action.  28 U.S.C. § 1391(c)(2).  Likewise, Defendants DOD, DOE and NNSA are deemed to reside in this District because each is subject to this Court's personal jurisdiction in this action.

28.     Venue also is proper in this District under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occur or occurred in this District.

29.     Defendant NNSA has eight operational facilities in this Country, three of which are nuclear weapons labs.  Of the three nuclear weapons labs, one is in this District, in Livermore,

COMPLAINT FOR BREACH OF THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

California. Work at the Livermore location includes oversight of the NNSA Lawrence Livermore National Weapons Design Lab (the "Livermore Lab"). As set forth below, the U.S. nuclear weapons modernization programs, including the work at the Livermore Lab, constitute a breach of U.S. Treaty obligations.

30. In addition to nuclear weapons design work, one of the responsibilities of the Livermore Lab is to support the refurbishment of the U.S. nuclear stockpiles, and enhance the reliability of the nuclear explosives package. Upon information and belief, the 2013 budget for the nuclear weapons segment of the work at the Livermore Lab was approximately $1 billion. Upon information and belief, there is not an NNSA nuclear weapons lab in the District of Columbia.

31. The U.S. rejects compulsory jurisdiction of the ICJ, and considers judgments of the ICJ to not be binding on the U.S. Accordingly, if federal court is not the appropriate venue for the Plaintiff Nation to seek resolution of the interpretation of the Treaty, and the United States' breach of the Treaty, then, according to the U.S., no other legal venue exists for such resolution.

32. *Intradistrict Assignment.* As explained above, a substantial part of the events or omissions giving rise to the claims occur or occurred at Livermore Labs in Livermore, California. Livermore, California is within Alameda County, making assignment to the San Francisco Division of this United States District Court appropriate and proper. *See* Local Civil Rule 3-2(d)

## IV. BACKGROUND

### A. The Creation, Testing and Use of Nuclear Weapons before the Treaty

33. The U.S. was the first country in the world to develop and test nuclear weapons, and it conducted the first successful test of a nuclear explosive device on July 16, 1945. It used nuclear weapons in warfare on the Japanese cities of Hiroshima and Nagasaki on August 6, 1945 and August 9, 1945, respectively. The United States was the sole possessor of nuclear weapons in the world until the Soviet Union tested its first nuclear weapon on August 29, 1949.

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

34.     In 1952, the United Kingdom (or "UK") tested its first nuclear weapon.  In 1960, France tested its first nuclear weapon, and in 1964, China tested its first nuclear weapon.

35.     On November 1, 1952, the U.S. detonated the world's first thermonuclear weapon—a hydrogen bomb—on Eniwetok atoll, an atoll in the Marshall Islands.[7]  The blast had an explosive yield of 10.4 megatons, over 400 times the destructive force of the bomb the U.S. dropped on Hiroshima.[8]

**B.     The Treaty and its Obligations**

**1.     The Grand Bargain**

36.     In the 1960s, negotiations eventuated in agreement on the Nuclear Non-Proliferation Treaty.  The U.S., Russia, the UK, France and China, all Parties to the NPT, are the only States meeting the Treaty's definition of a "nuclear-weapon State" for "the purposes of this Treaty."[9]

37.     The Treaty was opened for signatures on July 1, 1968, and entered into force on March 5, 1970.  President Lyndon Johnson signed the Treaty on or about July 1, 1968.  The Senate voted to consent to ratification by the U.S. on or about March 13, 1969, by a vote of 83 to 15.  President Richard Nixon signed the ratification documents for the Treaty on or about November 24, 1969.

38.     The Treaty reflects the grand bargain made by the parties to it:  the non-nuclear weapon States agreed not to acquire nuclear weapons and the States possessing nuclear weapons agreed to negotiate their elimination.[10]

---

[7] *See 'Mike' Test*, PBS, http://www.pbs.org/wgbh/amex/bomb/peopleevents/pandeAMEX63.html (last visited February 19, 2014).

[8] *The United States' Nuclear Testing Programme,* CTBTO PREPARATORY COMMISSION, http://www.ctbto.org/nuclear-testing/the-effects-of-nuclear-testing/the-united-states-nuclear-testing-programme

[9] Article IX.3 of the NPT provides: "For the purposes of this Treaty, a nuclear-weapon State is one which has manufactured and exploded a nuclear weapon or other nuclear explosive device prior to 1 January 1967".

[10] Thomas Graham, Correspondence, The Origin and Interpretation of Article VI, Vol.15, No. 1, NONPROLIFERATION REV. 7, 9 (2008), *available at* http://cns.miis.edu/npr/pdfs/151_correspondence.pdf; 2010 Review Conference of the Parties to the

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

9

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

39.     As part of that grand bargain, Article VI of the Treaty states, in its entirety:

Each of the Parties to the Treaty undertakes to pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date and to nuclear disarmament, and on a treaty on general and complete disarmament under strict and effective international control.

40.     Nowhere in the Treaty are the Article VI obligations of the U.S. conditioned on the discretion or value determinations of U.S. leaders.

41.     Moreover, as is clear from the terms of the Treaty, no executing legislation by the U.S. was required for the Treaty obligations to go into effect, and the U.S. has never claimed to the contrary, including in pursuit of enforcement of the non-Article VI obligations of the Treaty.

42.     The U.S. President has the obligation to ensure that Article VI of the Treaty be "faithfully executed." *See* Restatement (Third) of Foreign Relations Law § 111 cmts. a and c. (1987).  As set forth above, under the Supremacy Clause of the Constitution, treaties are part of the supreme law of the land. If the President fails to faithfully execute the terms of the Treaty, then the U.S. is in breach of its Treaty obligations as well as in breach of the supreme law of the U.S.

## 2.     The International Court of Justice Interpretation of the NPT

43.     In 1996, the International Court of Justice interpreted the Treaty and issued an Advisory Opinion on the Legality of the Threat or Use of Nuclear Weapons.  The ICJ declared that Article VI involves "an obligation to achieve a precise result – nuclear disarmament in all its aspects – by adopting a particular course of conduct, namely, the pursuit of negotiations on the matter in good faith."[11]  The ICJ went on to conclude, *unanimously*, that "[t]here exists an obligation to pursue in good faith and bring to a conclusion negotiations leading to nuclear disarmament in all its aspects under strict and

_____

Treaty on the Non-Proliferation of Nuclear Weapons, New York, May 3-12, 2010, *Final Document*, U.N. Doc. NPT/CONF.2010/50 (Vol. 1), pp. 19-20 (2010).

[11] *Supra*, n. 5, para. 99.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

effective control."[12]   This "recognizes that the provisions of Article VI . . . go beyond mere obligations of conduct—to pursue nuclear disarmament negotiations in good faith—and actually involve an obligation of result, *i.e.*, to conclude those negotiations."[13]

44.     The ICJ observed that "fulfilling the obligation expressed in Article VI . . . remains without any doubt an objective of vital importance to the whole of the international community today."[14]

45.     Article VI is the "only treaty provision in which NWS [nuclear-weapon States] have undertaken a legal obligation to negotiate nuclear disarmament agreements"[15] and is considered "the single most important provision of the treaty . . . from the standpoint of long-term success or failure of its goal of proliferation prevention."[16]

46.     The United States does not recognize judgments of the ICJ as binding domestic law in all circumstances, but does recognize that, even where they are not binding domestic obligations, ICJ judgments constitute international obligations.  Moreover, even where an ICJ judgment is not enforceable as domestic law, the underlying treaty may still be enforceable in federal court.

47.     If the U.S. claims that Article VI of the NPT is not a binding domestic obligation, then the non-nuclear-weapon States parties to the Treaty are entitled to know that the U.S. makes such a claim.  And, even if the NPT were found not to be a binding domestic obligation, it remains an international obligation and the U.S. is not relieved of the consequences of its violation of its international obligation.

---

[12] *Supra*, n. 5, para. 105 (2) F.

[13] M. Marin Bosch, "*The Non-Proliferation Treaty and its Future*", *in* INTERNATIONAL LAW, THE INTERNATIONAL COURT OF JUSTICE AND NUCLEAR WEAPONS 375 (L. Boisson de Chazournes and P. Sands 1999).

[14] *Supra*, n. 5, para. 103.

[15] *Supra,* n. 13 at 388.

[16] E. Firmage, *The Treaty on the Non-Proliferation of Nuclear Weapons*, 63 AM. J. INT'L L. 711, 732 (1969).

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

48.     Because they are agreements among nations, federal courts interpreting treaties consider post-ratification understandings of the nations that are parties to the treaties.  Postratification understandings of the NPT are reflected in part in Final Documents from the Treaty Review Conferences, which occur every five years.

**3.     The Treaty Review Conferences**

49.     In the Final Document of the 2000 Treaty Review Conference, the parties agreed by consensus, *inter alia*, upon, "An unequivocal undertaking by the nuclear-weapon States to accomplish the total elimination of their nuclear arsenals leading to nuclear disarmament to which all States parties are committed under Article VI."[17]   "This provision has considerable legal weight; it represents the practice and agreement of states bearing directly and specifically upon the interpretation of article VI."[18]

50.     The 2005 Treaty Review Conference failed to reach agreement on a Final Document and was generally considered a failure by the parties to the Treaty.

51.     In the 2010 Treaty Review Conference Final Document, the parties resolved in Action 1 as follows: "All States parties commit to pursue policies that are fully compatible with the Treaty and the objective of achieving a world without nuclear weapons."[19]

52.     Further, in the 2010 Treaty Review Conference Final Document, the parties resolved in Action 3 as follows: "In implementing the unequivocal undertaking by the nuclear-weapon States to accomplish the total elimination of their nuclear arsenals, the nuclear-weapon States commit to

---

[17] 2000 Review Conference of the Parties of the Treaty on the Non-Proliferation of Nuclear Weapons, New York, April 24-May 19, 2000, *Final Document*, U.N. Doc. NPT/CONF.2000/28 (Vol. 1), p. 14 (2000).

[18] John Burroughs, *International Law*, in Ray Acheson, ed., Assuring Destruction Forever: Nuclear Weapon Modernization Around the World (Reaching Critical Will – a project of the Women's International League for Peace and Freedom, 2012), p. 119.

[19] *See* 2010 Review Conference *supra* n. 10 at p. 20.

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

undertake further efforts to reduce and ultimately eliminate all types of nuclear weapons, deployed and non-deployed, including through unilateral, bilateral, regional and multilateral measures."[20]

**C.      Good Faith is an Objective Legal Duty**

53.      As set forth above, the U.S. has a legally binding obligation under Article VI of the Treaty to pursue its negotiations "in good faith."

54.      Good faith is not some qualitatively subjective standard.  It has real meaning.  In the context of Article VI of the Treaty, good faith imposes a standard of objective reasonableness."[21] Moreover, "[a] significant practical consequence of the 'good faith' principle is that a party which committed itself in good faith to a course of conduct . . . would be estopped from acting inconsistently with its commitment. . . ."[22]

55.      As set forth in The Restatement of Law of Contracts, promulgated by the American Law Institute:

> Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness. . . . A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.[23]

56.      Moreover, and significantly, "evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified."[24]  Thus the U.S. may be found to be in violation of the Treaty even if the Executive believes that such violation is justified.

---

[20] *Id.*

[21] *Supra*, n. 3.

[22] *Id.* at p. 157.

[23] RESTATEMENT (SECOND) OF CONTRACTS § 205 cmts. a and d (1981).

[24] *Id.* at cmt. d.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

57.     With respect to Article VI of the Treaty, good faith "requires refraining from actions undermining the achievement of the disarmament objective,"[25] such as modernization of nuclear forces and infrastructure to last for the foreseeable future.

58.     Courts routinely apply the good faith standard and judge the good faith of parties, and the standard of good faith is a judicially manageable standard.

59.     The Plaintiff Nation is not asking the court to make any initial policy determination reserved to the Executive.  The Plaintiff Nation is asking the court to determine whether the actions of the U.S. constitute a breach of the Treaty.  Either they do or they do not.  Neither answer constitutes a policy determination.

## V.  THE U.S. IS IN CONTINUING BREACH OF THE TREATY

60.     This Complaint is supported by the Declaration of Burns H. Weston, attached hereto as Exhibit A, and incorporated herein by this reference.

**A.     The U.S. is in Continuing Breach of its Obligation to Pursue Negotiations in Good Faith on Effective Measures Relating to the Cessation of the Nuclear Arms Race at an Early Date**

61.     The two atom bombs that the U.S. dropped on Hiroshima and Nagasaki in 1945 were quite small compared to the nuclear weapons the U.S. maintains today.

62.     As set forth above, under the Treaty the U.S. has a legally binding obligation "to pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date."

---

[25] Elizabeth Shafer, *International Humanitarian Law and the Nuclear Disarmament Obligation of NPT Article VI: Good Faith as Key in a Concerted Contextual Commitment to Abolition,* PAPER PREPARED FOR THE VANCOUVER CONFERENCE: HUMANITARIAN LAW, HUMAN SECURITY: THE EMERGING PARADIGM FOR NON-USE AND ELIMINATION OF NUCLEAR WEAPONS FEBRUARY 10-11, 2011, 6 (2011), http://www.lcnp.org/wcourt/Feb2011VancouverConference/papershafer.pdf (citing Charles J. Moxley et al., *Nuclear Weapons and Compliance with International Humanitarian Law and the Nuclear Non-Proliferation Treaty*, 34 FORDHAM INT'L L.J. 595, 693 (2011)).

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

63.     More than 44 years have passed since the entry into force of the Treaty and the U.S. has not pursued negotiations in good faith on effective measures relating to the cessation of the nuclear arms race at an early date.  In fact, "an early date" has long since passed.  Rather, as detailed herein, the U.S. still continues to modernize and upgrade its nuclear weapons arsenal and to develop programs for extending the life of its nuclear weapons for decades to come, demonstrating that it remains engaged in a nuclear arms race.  These modernizations and upgrades, to be sure, include enhancing the "capabilities" of the U.S. nuclear weapons.  Such modernizations and upgrades constitute what is known as nuclear "vertical proliferation."

64.     Although the U.S. negotiated the Comprehensive Nuclear-Test-Ban Treaty ("CTBT") and signed it in 1996, it failed to ratify the treaty.  Instead, after the 2000 Treaty Review Conference and before the 2005 Treaty Review Conference, the U.S. announced it would not seek Senate ratification of the CTBT.  During the same time period, the U.S. also withdrew from the 1972 Anti-Ballistic Missile Treaty, paving the way for further testing and deployment of missile defense systems that would help drive the continued nuclear arms race.

65.     Following signing the CTBT, the U.S. conducted subcritical nuclear tests.  The first subcritical nuclear experiment was conducted by the U.S. on July 2, 1997. To date, the U.S. has conducted at least 26 subcritical nuclear experiments.

66.     Two ongoing nuclear modernization programs in the U.S., the W78 Life Extension Program ("LEP") and the B61-12 LEP, demonstrate that the U.S. continues to build nuclear weapons with new military characteristics that are capable of being deployed for an additional thirty years or more.  Simultaneous plans by the U.S., including by and through its Nuclear Weapons Agencies, to design, manufacture, and deploy new generations of bombers, submarines, and land-based missiles demonstrate that the U.S. plans to rely on nuclear weapons for decades to come.

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

67.    U.S. modernization of its own nuclear forces and deployment of missile defense installations have been significant factors in keeping the nuclear arms race alive and in spurring the modernization of the nuclear forces of other States.

68.    On April 5, 2009, President Obama, in a speech in Prague, Czech Republic, said, "So today, I state clearly and with conviction America's commitment to seek the peace and security of a world without nuclear weapons." He continued, "This goal will not be reached quickly—perhaps not in my lifetime."[26]

69.    Based on government documentation, one NGO summarized the modernization programs for the U.S. Department of Defense and the U.S. National Nuclear Security Administration in the following tables:[27]

## US NUCLEAR MODERNIZATION PROGRAMS

| Department of Defense Programs | | | | |
|---|---|---|---|---|
| System | Modernization Plan | Costs | Length of Deployment | Additional Information |
| **Minuteman III ICBM** | Modernization and Replacement Program | $7 billion | through 2030 and possibly longer | Modernizes the propellant, guidance systems, propulsion system, targeting system, reentry vehicles and continues work on the rocket motors |
| **Next ICBM** | ICBM follow on study | $10 billion (FY 2014-2023) | | Analysis of Alternatives will be completed in 2014, at which point the Air Force will determine if it will go forward with the program |
| **B-2 Bomber** | Modernization Program | $9.5 billion (FY 2000-2014) | 2050s | Improves radar and high frequency satellite communications capabilities for nuclear command and control |
| **B-52H Bomber** | On-going modifications | | 2040s | Incorporates global positioning systems, updates computers and modernizes heavy stores adapter beams, and a full array of advance weapons |

[26] President Barack Obama, Remarks in Prague, Czech Republic (Apr. 5, 2009), http://prague.usembassy.gov/obama.html.

[27] Arms Control Association, *US Nuclear Modernization Programs* (Jan. 2014), http://www.armscontrol.org/factsheets/USNuclearModernization#chart).

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

16

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

| Long Range Strike Bomber | Research and development phase | $32 billion (FY 2014-2023) | | The exact specifications of the new bomber are yet to be determined |
|---|---|---|---|---|
| Long Range Standoff Cruise Missile | Replacement for the ALCM | $10-20 billion (estimated) | | Air Force is completing the Analysis of Alternatives. |
| SSBNX | New ballistic missile submarine | $100 billion (estimated) | 2031 - 2080s | Replacement submarine for the existing Ohio-class SSBN |
| Trident II D5 SLBM LEP | Modernization and life extension | | 2042 | |
| **Department of Energy - NNSA Weapons Activities** | | | | |
| System | Modernization Plan | Costs | Length of Deployment | Additional Information |
| W76 | Life Extension Program | $4 billion | 2040-2050 | Scheduled for completion in 2018 |
| B61 - 3/4/7/10 | Life Extension Program | $10 billion | 2040s | Scheduled for completion in 2023 |
| W78 | Life Extension Program | $5 billion | 2050s | Scheduled for completion in 2025 |
| W88 | Life Extension Program | | | Scheduled to begin in FY 2016 and end in FY 2031 |

**B.    The U.S. is in Continuing Breach of its Obligation to Pursue Negotiations in Good Faith on Effective Measures Relating to Nuclear Disarmament**

70.    One of the reasons why the Marshall Islands became a party to the NPT is that this Treaty is the key instrument of the international community for ridding the world of nuclear weapons.[28]  The Treaty contains the solemn promise and legal obligation of the parties to Treaty to sit down and

---

[28] Hon. Mr. Phillip Muller, former Minister of Foreign Affairs, Republic of the Marshall Islands, Statement at the U.N. High-Level Meeting on Nuclear Disarmament (Sept. 26, 2013) (Hon. Mr. Phillip Muller stated that the Marshall Island's "deeper purpose" is "that no nation and people should ever have to bear witness to the burden of exposure to the devastating impacts of nuclear weapons."), http://www.un.org/en/ga/68/meetings/nucleardisarmament/pdf/MH_en.pdf.

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

negotiate towards total nuclear disarmament.  The United States has broken that promise and failed to meet its obligations under the Treaty.

71.    The 2010 Nuclear Posture Review Report carried forward longstanding US policy.  It states that the "fundamental role of U.S. nuclear weapons . . . is to deter nuclear attack on the United States, our allies, and partners."[29]   However, with respect to "states that possess nuclear weapons and states not in compliance with their nuclear non-proliferation obligations[,] there remains a narrow range of contingencies in which U.S. nuclear weapons may still play a role in deterring a conventional or CBW [chemical or biological weapon] attack against the United States or its allies and partners."[30]   The Report adds that the "United States wishes to stress that it would only consider the use of nuclear weapons in extreme circumstances to defend the vital interests of the United States or its allies and partners."[31]

72.    As set forth above, under the Treaty the U.S. has a legally binding and unconditional obligation "to pursue negotiations in good faith on effective measures relating to . . . nuclear disarmament."  Despite this, as set forth below, the U.S. has attempted to condition its Article VI obligations on, *inter alia*, improved results in non-proliferation.

73.    The U.S. has always voted "NO" on the UN General Assembly's Resolution on "Follow-up to the advisory opinion of the International Court of Justice on the legality of the threat or use of

---

[29] U.S. DEPARTMENT OF DEFENSE, NUCLEAR POSTURE REVIEW REPORT, p. 15 (Apr. 2010), http://www.defense.gov/npr/docs/2010%20nuclear%20posture%20review%20report.pdf.

[30] *Id*. at 16.

[31] *Id*.; U.S. DEPARTMENT OF DEFENSE, REPORT ON NUCLEAR EMPLOYMENT STRATEGY OF THE UNITED STATES SPECIFIED IN SECTION 491 OF 10 U.S.C. (June 12, 2013), http://www.defense.gov/pubs/ReporttoCongressonUSNuclearEmploymentStrategy_Section491.pdf (A 2013 presidential nuclear weapons employment guidance); *See also* HANS M. KRISTENSEN AND ROBERT S. NORRIS, BULLETIN OF THE ATOMIC SCIENTISTS: U.S. NUCLEAR FORCES, 2014 (Sage Publications, Jan. 6, 2014), http://bos.sagepub.com/cgi/reprint/70/1/85.

COMPLAINT FOR BREACH OF THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

nuclear weapons." The Resolution, adopted every year since 1996,[32] underlines the ICJ's unanimous conclusion that there is an obligation to pursue negotiations leading to nuclear disarmament and calls on States to immediately fulfill that obligation by commencing multilateral negotiations leading to the early conclusion of a Nuclear Weapons Convention.

74.      On April 27, 2004, John Bolton testified on behalf of the Bush Administration with respect to the nonproliferation obligations under the Treaty (not the disarmament obligations).  Mr. Bolton confirmed the obvious, that nuclear weapons are weapons of mass destruction, by stating, in pertinent part:

> We cannot hope the problem will go away. We cannot leave it to "the other guy" to carry the full measure of the challenge of demanding full compliance. We cannot divert attention from the violations we face . . . . If a party cares about the NPT, then there is a corresponding requirement to care about violations and enforcement. . . . [T]he time for business as usual is over. An irresponsible handful of nations not living up to their Treaty commitments are undermining the NPT's mission. . . . After all, the Treaty can only be as strong as our will to insist that states comply with it.[33]

75.      The Plaintiff Nation cares deeply about the NPT, and about violations of the NPT by the U.S., and enforcement of the NPT with respect to the U.S.

76.      In 2006, at the 60th anniversary of the first meeting of the U.N. General Assembly, former Secretary General of the United Nations Kofi Annan directly linked the nuclear weapon countries' failure to disarm with other countries' increased efforts at nuclear proliferation, stating as follows: "the more that those states that already have [nuclear weapons] increase their arsenals, or insist

---

[32] G.A. Res. 68/42, U.N. Doc. A/RES/68/42 (Most recently on Dec. 5, 2013).

[33] John R. Bolton, Under Secretary for Arms Control and International Security, Statement to the Third Session of the Preparatory Committee for the 2005 Review Conference of the Treaty on the Non-Proliferation of Nuclear Weapons in New York City: The N.P.T.: A Crises of Non-Compliance, (April 27, 2004), http://2001-2009.state.gov/t/us/rm/31848.htm.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

that such weapons are essential to their national security, the more other states feel that they too must have them for their security."[34]

77.     In 2010, Ellen Tauscher, then (and now former) U.S. Under-Secretary for Arms Control and International Security, stated as follows:

> Nuclear disarmament is not the Holy Grail. It's only worth pursuing in so far as it increases our national security. I believe that the journey on the road to zero is perhaps more important than the goal itself. It's those concrete steps that we take that will enhance the national security of the United States and make the world a more stable place.[35]

Treaties do not work that way—a party may not legally choose to satisfy its treaty obligations *only when and if* they happen to coincide with its other national interests.

78.     On December 3, 2012, the UN General Assembly decided to establish an Open-Ended Working Group ("OEWG") to develop proposals to take forward multilateral nuclear disarmament negotiations for the achievement and maintenance of a world without nuclear weapons.[36]  However, the U.S. voted against the resolution[37] and did not attend any of the OEWG's meetings.  Instead, in a joint 2013 statement, the U.S. declared that it was "unable to support this resolution, the establishment of the OEWG and any outcome it may produce."[38]

---

[34] Kofi Annan, Former Secretary General of the United Nations, Remarks at the U.N. 60th Anniversary Event in London, United Kingdom (Jan. 2006).

[35] Ellen Tauscher, Former Under Sec'y for Arms Control & Int'l Sec., U.S. Dep't of State, Remarks at the Global Zero Summit in Paris, France (Feb. 3, 2010), http://www.state.gov/t/us/136425.htm (emphasis added); *see also* Peter Weiss, *Taking the Law Seriously:  The Imperative Need for a Nuclear Weapons Convention*, *in* NUCLEAR WEAPONS AND COMPLIANCE WITH INTERNATIONAL LAW AND THE NUCLEAR NON-PROLIFERATION TREATY, 34 FORDHAM INT'L L.J., 776, 782-83 (2011), citing same.

[36] G.A. Res. 67/56, U.N. Doc. A/RES/67/56 (Jan. 4, 2013) ("Taking forward multilateral nuclear disarmament negotiations for the achievement and maintenance of a world without nuclear weapons").

[37] U.N. GAOR, 67th Sess., 48th plen. Mtg. at 20, U.N. Doc A/67/PV.48 (Dec. 3, 2012) (Along with France, the Russian Federation and the UK).

[38] Guy Pollard, Deputy Permanent Representative of the United Kingdom of Great Britain and Northern Ireland to the Conference on Disarmament, Explanation of vote on taking forward multilateral nuclear disarmament negotiations on behalf of France, the United Kingdom and the United States at the 67th session of the United Nations General Assembly First Committee (Nov. 6,

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

79.   Paradoxically, "states considered at risk of violating the nonproliferation provisions of the NPT are subject to great criticism while those in blatant violation of the disarmament article—currently all five of the nuclear-weapon states parties—are criticized only mildly."[39]

80.   While it has pursued negotiations on strategic arms reductions and has reached agreements with the Soviet Union (and then with its successor State, Russia) to reduce the number of nuclear warheads that are deployed, and delivery systems in their respective arsenals, the U.S. has not engaged in good faith negotiations on effective measures for nuclear disarmament, that is, to disarm its nuclear arsenal.  Such negotiations would have the goal of a new treaty, a Nuclear Weapons Convention, for the prohibition and complete elimination of nuclear arms.  The U.S. has not engaged in such negotiations in a sustained manner indicative of good faith.

81.   At a speech at Monterey Institute of International Studies on January 18, 2013, United Nations Secretary General Ban Ki-moon stated as follows:

> "[N]uclear disarmament progress is off track.  Delay comes with a high price tag.  The longer we procrastinate, the greater the risk that these weapons will be used, will proliferate or be acquired by terrorists.  But our aim must be more than keeping the deadliest of weapons from 'falling into the wrong hands'.  There are no right hands for wrong weapons."[40]

82.   During his confirmation hearings, on or about January 24, 2013, John Kerry, now the U.S. Secretary of State, in sworn testimony stated that nuclear disarmament is only "a goal.  It's an aspiration. And we should always be aspirational. . . . But *it's not something that could happen in*

---

2012),http://www.reachingcriticalwill.org/images/documents/Disarmament-fora/1com/1com12/eov/L46_France-UK-US.pdf.

[39] Tim Wright, *Negotiations for a Nuclear Weapons Convention: Distant Dream or Present Possibility?* 10 MELB. J. INT'L L. 217, 230 (2009) (emphasis added).

[40] Ban Ki-moon, United Nations Secretary General, Statement at Monterey Institute of International Studies in Monterey, California: Advancing the Disarmament and Non-proliferation Agenda: Seeking Peace in an Over-armed World (Jan. 18, 2013), http://www.un.org/sg/statements/index.asp?nid=6557.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

*today's world. . . .*"[41]   This calls into question the very Article VI bargain of the NPT.  Moreover, "any argument by the United States that the existing treaty really only required that it generally work towards some extremely far off objective of eventual disarmament rings hollow."[42]

83.    At the High-Level Meeting of the U.N. General Assembly on Nuclear Disarmament on September 26, 2013, the Vatican Secretary for Relations with States, Archbishop Dominique Mamberti, stated as follows: "Under the terms of the Non-Proliferation Treaty, states are enjoined to make 'good faith' efforts to negotiate the elimination of nuclear weapons.  Can we say there is 'good faith' when modernization programs of the nuclear weapons states continue despite their affirmations of eventual nuclear disarmament?"[43]

84.    Also on September 26, 2013, the U.S. made a joint statement with France and the UK, through UK Minister Alistair Burt, providing that a precondition to effective disarmament negotiations pursuant to Article VI is now a strong and effective non-proliferation regime, including with respect to nonparties to the Treaty.[44]  *This precondition is nowhere contained in the Treaty*.  The U.S. position on this issue, moreover, creates a paradox whereby (i) U.S. continued reliance on nuclear weapons (and opposition to the initiation of negotiations for complete disarmament) leads to proliferation, including by nonparties to the Treaty, while (ii) the U.S. insists that effective nonproliferation with respect to nonparties to the Treaty is now a precondition to effective disarmament negotiations under the Treaty.

[41] Available at http://www.cnn.com/2013/01/24/politics/kerry-nomination/ (emphasis added).

[42] Ronald J. Sievert, *Working Toward a Legally Enforceable Nuclear Non-Proliferation Regime*, 34 FORDHAM INT'L L.J. 93, 95 (2010).

[43] Thomas C. Fox, *Vatican Challenges Nuclear Powers' Disarmament Efforts,* NATIONAL CATHOLIC REPORTER, Sept. 27, 2013, http://ncronline.org/blogs/ncr-today/vatican-challenges-nuclear-powers-disarmament-efforts.

[44] Alistair Burt, Minister, Parliamentary Under Secretary of State United Kingdom of Great Britain and Northern Ireland, Statement to the United Nations General Assembly High Level Meeting on Nuclear Disarmament on behalf of France, the United Kingdom and the United States (Sept. 26, 2013), http://www.un.org/en/ga/68/meetings/nucleardisarmament/pdf/GB_en.pdf.

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

85.     Angela Kane, the U.N. High Representative for Disarmament Affairs, speaking to civil society groups about nuclear disarmament on October 28, 2013, stated as follows: "Even today, some 17,000 of these weapons still remain, with thousands of them on high-alert status or subject to 'first use' nuclear doctrines. These weapons are still deployed abroad in countries that are officially called non-nuclear-weapon States. We also have the Nuclear Non-Proliferation Treaty, which has a provision requiring all its parties to undertake negotiations in good faith on nuclear disarmament—but those negotiations have never taken place in the 43-year history of that treaty."[45]

86.     As Nobel Laureate and Professor Sir Joseph Rotblat has emphasized:  "If some nations – including the most powerful militarily – say that they need nuclear weapons for their security, then such security cannot be denied to other countries which really feel insecure.  Proliferation of nuclear weapons is the logical consequence of this nuclear policy."[46]

87.     As the ICJ unanimously concluded in 1996, "[t]here exists an obligation to pursue in good faith and bring to a conclusion negotiations leading to nuclear disarmament in all its aspects under strict and effective international control."[47]  The U.S. has not brought to conclusion negotiations for "nuclear disarmament in all its aspects," as required by Article VI of the Treaty and as defined by the ICJ.  <u>In fact, the U.S. has never once, during the 44 year history of the Treaty, convened, or even called for, such negotiations to begin.</u>

---

[45] Angela Kane, High Representative for Disarmament Affairs, United Nations Office for Disarmament Affairs, Keynote Address at the Meeting of United Nations Luncheon in New York: Nuclear Weapons: Threats and Solutions (Oct. 28, 2013), https://unoda-web.s3.amazonaws.com/wp-content/uploads/2013/10/HR_GSI_event.pdf.

[46] JOSEPH ROTBLAT, SCIENCE AND NUCLEAR WEAPONS: WHERE DO WE GO FROM HERE? THE BLACKABY PAPERS 7 (2004).

[47] *Supra,* n. 5.

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

**C.      The U.S. Breach of the Treaty Deprives the Plaintiff Nation of the Benefit of Its Bargain**

88.      The U.S. breach of the Treaty causes increased proliferation of nuclear weapons and measurable increased risks associated with such proliferation.

89.      The fact that increased risks caused by the U.S. breaches of the Treaty are real and put the peoples of the Marshall Islands, and others, in unacceptably grave danger, is not a partisan issue.  In a January 15, 2008 Article written by George P. Shultz, William J. Perry, Henry A. Kissinger and Sam Nunn, the authors jointly note the following:

> In some respects, the goal of a world free of nuclear weapons is like the top of a very tall mountain. From the vantage point of our troubled world today, we can't even see the top of the mountain, and it is tempting and easy to say we can't get there from here. But the risks from continuing to go down the mountain or standing pat ***are too real to ignore***. We must chart a course to higher ground where the mountaintop becomes more visible.[48]

90.      Former Defense Secretary Robert McNamara stated in 2005:  "I would characterize current U.S. nuclear weapons policy as immoral, illegal, militarily unnecessary and dreadfully dangerous."[49]

91.      Also in 2005, former President Jimmy Carter stated in an Op-Ed to the Washington Post: "While claiming to be protecting the world from proliferation threats in Iraq, Libya, Iran and North Korea, American leaders not only have abandoned existing treaty restraints but also have asserted plans to test and develop new weapons."[50]

92.      The failure by the U.S. to honor its Article VI obligations to pursue negotiations in good faith toward disarmament denies Plaintiff Nation of a substantial portion of the benefit to which it is entitled as non-nuclear-weapon State party to the Treaty.  Plaintiff Nation has assiduously honored their

---

[48] George P. Shultz et al., *Toward a Nuclear-Free World*, THE WALL STREET JOURNAL, Jan. 15, 2008, http://online.wsj.com/news/articles/SB120036422673589947 (emphasis added).

[49] Robert S. McNamara, *Apocalypse Soon*, FOREIGN POLICY, May 5, 2005, http://www.foreignpolicy.com/articles/2005/05/05/apocalypse_soon.

[50] Jimmy Carter, *Saving Nonproliferation,* THE WASHINGTON POST, Mar.28, 2005, http://www.washingtonpost.com/wp-dyn/articles/A5754-2005Mar27.html.

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

obligations under the Treaty so as to promote non-proliferation.  It has done so in the belief and expectation that the U.S. would honor its Treaty commitment with respect to disarmament.  The continuing failure by the U.S. to honor its Article VI commitments, and the U.S.'s apparent effort to impose conditions on those commitments, including but not limited to conditions that specifically involve nonparties to the Treaty, leaves Plaintiff Nation exposed to the dangers of existing nuclear arsenals and the real probability that additional States will develop nuclear arms, as they have in the past.  As a party to the Treaty who has unquestionably honored its non-proliferation obligations, Plaintiff Nation is entitled to the benefit of its Treaty bargain:  Negotiations in good faith by the U.S. on effective measures relating to nuclear disarmament.

93.     The declaratory relief sought herein by Plaintiff Nation will redress the harm that it is suffering because it will constitute a binding domestic judicial determination of the obligations of the U.S. set forth in Article VI.  Plaintiff Nation believes that with such a determination in place, it may best determine its next steps in pursuit of the grand bargain represented by the Treaty.  Moreover, should the U.S., following declaratory and/or injunctive relief by the Court, conform its conduct to that required by Article VI, it would provide for Plaintiff Nation a measure, currently lacking, of that conduct for which it contracted under the Treaty.

## VI. CAUSES OF ACTION

## COUNT I:  DECLARATORY JUDGMENT

94.     Plaintiff Nation repeats and re-alleges each and every allegation contained above as if fully set forth herein.

95.     Article VI of the NPT creates obligations on the part of all parties to the NPT, including specifically those parties possessing nuclear weapons, such as the U.S.

96.     The legal interpretation of the NPT is not a policy determination to be made or changed each term by the elected United States Executive.  On the contrary, it is a legal interpretation that is

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

"emphatically the province and duty of the judicial department" of this Nation. *Marbury v. Madison*, 5 U.S. (Cranch 1) 137, 177 (1803).

97.    Plaintiff Nation, who is a party to the NPT, ask this Court to determine specifically under U.S. law the legal meaning of the obligations of the U.S. under Article VI of the NPT, and to declare the meaning to be as set forth below in the Prayer for Relief.

## COUNT II:  DECLARATORY JUDGMENT

98.    Plaintiff Nation repeats and re-alleges each and every allegation contained above as if fully set forth herein.

99.    Article VI of the NPT creates obligations on the part of all parties to the NPT, including specifically those parties possessing nuclear weapons, such as the U.S.

100.    Whether the conduct of the U.S. satisfies the legal obligations of Article VI of the NPT is not a policy determination to be made or changed each term by the elected United States Executive.  On the contrary, it is a legal determination within with the specific province of the judiciary.  It requires "careful examination of the textual, structural, and historical evidence [that will be] put forward by the parties. . . . This is what courts do." *Zivotofsky v. Secretary of State*, 132 S. Ct. 1421, 1430 (2012).

101.    Defendant the United States, including through its Nuclear Weapons Agencies, has a plain and clear duty under the NPT to "pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date and to nuclear disarmament. . . ."[51]

102.    Defendant the United States, including by and through its Nuclear Weapons Agencies, is in breach of the duties under Article VI of the NPT for, *inter alia*, failing to pursue negotiations in good faith on effective measures relating to (i) cessation of the nuclear arms race at an early date; and (ii) nuclear disarmament.  The U.S. actions, including but not limited to (i) continued arms racing, including

---

[51] *Supra*, n. 2.

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

through its actions undertaken at the Livermore Lab in this District; (ii) stated policy regarding nuclear disarmament; (iii) creation of new preconditions to nuclear disarmament negotiations, such as a stronger worldwide nonproliferation regime; (iv) positions in multilateral forums, including on the U.N. Open-Ended Working Group, and the U.N. General Assembly's Resolution on "Follow-up to the advisory opinion of the International Court of Justice on the Legality of the Threat or Use of Nuclear Weapons;" and (v) opposition to negotiation of a Nuclear Weapons Convention, are all evidence of the U.S. breach of its Article VI obligations.

## COUNT III: INJUNCTIVE RELIEF

103. Plaintiff Nation requests an injunction against the U.S. requiring it to comply with its obligations under Article VI of the NPT, as specified in the Prayer for Relief, below, which is incorporated herewith as if fully set forth. To be clear, Plaintiff Nation is not requesting that the U.S. be compelled toward unilateral disarmament.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nation respectfully requests that this Court enter a judgment against Defendants and in favor of Plaintiff Nation, and grant the following relief:

A. As to Count I, a Declaratory Judgment as follows:

1. That the U.S. obligations under Article VI to pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date and to nuclear disarmament are not conditional, and are specifically not conditioned on improvements or milestones in the worldwide nonproliferation regime for nonparties to the Treaty.

2. That under Article VI of the Treaty, the U.S. has an obligation to adopt a particular course of conduct, namely, the pursuit of negotiations for nuclear disarmament in good faith.

3.      That under Article VI of the Treaty, the U.S. has an obligation to pursue in good faith and bring to a conclusion negotiations leading to nuclear disarmament in all its aspects under strict and effective control;

4.      That under Article VI of the Treaty, the U.S. has an obligation to pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date.

B.      As to Count II, A Declaratory Judgment as follows:

1.      That the U.S., including by and through its Nuclear Weapons Agencies, is in continuing breach of the obligations under Article VI of the Treaty to pursue negotiations in good faith on effective measures relating to nuclear disarmament in all its aspects under strict and effective control; and

2.      That the U.S., including by and through its Nuclear Weapons Agencies, is in continuing breach of the obligations under Article VI of the Treaty to pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date.

C.      As to Count III, Injunctive Relief as follows:

1.      That the U.S. take all steps necessary to comply with its obligations under Article VI of the Treaty, as provided in the foregoing Declaratory Judgment, within one year of the date of this Judgment, including by *calling for and convening* negotiations for nuclear disarmament in all its aspects; or

2.      If said negotiations, which have never taken place to date, have been convened by the date of this Judgment, that the U.S. participate in such negotiations as required and within the construct contained in the foregoing Declaratory Judgment.

D.      On all claims for relief, grant Plaintiff Nation's reasonable attorneys' fees and costs incurred herein pursuant to 28 U.S.C. § 2412 and any other applicable law;

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101

COMPLAINT FOR BREACH OF
THE NON-PROLIFERATION TREATY

1      E.      Grant Plaintiff Nation such other, further, and different relief as the nature of the case

2 may require or as may be determined to be just, equitable, and proper by this Court.

3

4      DATED this 24th day of April, 2014.

5                    KELLER ROHRBACK L.L.P.

6

7                    By

8                       Juli E. Farris (SBN: 141716)
                       jfarris@kellerrohrback.com
9                       1129 State Street, Suite 8
                       Santa Barbara, California 93101
10                     (805) 456-1496, Fax (805) 456-1497

11                     Lynn L. Sarko (Pro Hac Vice Forthcoming)
                     lsarko@kellerrohrback.com
12                     Keller Rohrback L.L.P
                     1201 Third Avenue, Suite 3200
13                     Seattle, Washington 98101
                     (206) 623-1900; Fax (206) 623-3384
14

15                     Laurie B. Ashton (Pro Hac Vice Forthcoming)
                     lashton@kellerrohrback.com
16                     Gary A. Gotto (Pro Hac Vice Forthcoming)
                     ggotto@kellerrohrback.com
17                     Keller Rohrback L.L.P.
                     3101 North Central Ave., Suite 1400
18                     Phoenix, AZ 85012
                     (602) 248-0088; Fax (602) 248-2822
19

20                     ***Counsel for the Republic of the Marshall Islands***

KELLER ROHRBACK L.L.P.
1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101