IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REPUBLIC OF THE MARSHALL ISLANDS,<br><br>    Plaintiff,<br><br>  v.<br><br>THE UNITED STATES OF AMERICA, ET AL.,<br><br>    Defendants.<br>_____ / | No. C 14-01885 JSW<br><br>**ORDER GRANTING MOTION TO DISMISS** |

The Republic of the Marshall Islands ("Plaintiff") filed a complaint alleging breach of the Treaty on the Non-Proliferation of Nuclear Weapons ("Treaty") against the United States of America, the President, the Department of Defense and its Secretary, the Department of Energy and its Secretary, and the National Nuclear Security Administration (collectively, "Defendants"). Plaintiff contends Defendants are in violation of their obligations under the Treaty to pursue negotiations in good faith on effective measures relating to the cessation of the nuclear arms race. Defendants move for dismissal on several independent bases. The Court GRANTS Defendants' motion to dismiss.

**BACKGROUND**

Plaintiff alleges that the United States has breached its obligations under Article VI of the Treaty by allegedly failing to pursue negotiations in good faith on effective measures for nuclear disarmament.

Article VI of the Treaty provides:

> Each of the Parties to the Treaty undertakes to pursue negotiations in good faith on effective measures relating to cessation of the nuclear arms race at an early date and to nuclear disarmament, and on a treaty in general and complete disarmament under strict and effective international control.

According to the Report accompanying the Senate's resolution of advice and consent to ratification, the Treaty's "fundamental purpose is to slow the spread of nuclear weapons by prohibiting the nuclear weapon states which are party to the treaty from transferring nuclear weapons to others, and by barring the nonnuclear-weapon countries from receiving, manufacturing, or otherwise acquiring nuclear weapons." S. Ex. Rep. 91-1 at 1 (1969).

Plaintiff alleges that Defendants have failed to comply with their obligations under Article VI of the Treaty and have filed this action seeking (1) declaratory judgment pursuant to 28 U.S.C. Section 2201 with respect to (a) the interpretation of the Treaty and (b) whether the United States is in breach of the Treaty; and (2) an injunction directing the United States to take all necessary steps to comply with its obligations under Article VI of the Treaty within one year of the judgment in this matter, "including by calling for and convening negotiations for nuclear disarmament in all its aspects." (Compl. at ¶ 23.)

Defendants move to dismiss the complaint in its entirety on several bases. First, Defendants contend that Plaintiff lacks standing to pursue its claims. Second, Defendants argue that the request for this Court to direct international negotiations on nuclear disarmament is barred by the political question doctrine. Defendants also maintain that the Treaty fails to provide a private right of action in the federal courts, is improperly venued before this district, and is barred by Plaintiff's delay in filing.

The Court shall address additional facts in the remainder of this Order.

2

**ANALYSIS**

Defendants move to dismiss the complaint for several independent reasons. The Court shall address each in turn.

**A.    Standing.**

Defendants move to dismiss on the basis that Plaintiff lacks standing under Article III of the United States Constitution. The Court evaluates the motion to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In this case, Defendants raise a facial challenge to Plaintiff's standing and, therefore, the Court "must accept as true all material allegations in the complaint, and must construe the complaint in" Plaintiff's favor. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted).

The constitutional separation of powers doctrine, as embodied in Article III of the Constitution, requires that Plaintiff set out a claim for which it has standing to seek redress in the federal courts. Traditionally, to satisfy the Constitution's standing requirements, a plaintiff must show: (1) an "injury in fact" characterized as (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury appears fairly traceable to the challenged action of the defendant; and (3) that the injury will likely, as opposed to merely speculatively, be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *see also Clapper v. Amnesty International*, 133 S. Ct. 1138, 1147 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (internal quotations, citations and brackets omitted, emphasis in original).

3

Plaintiff here alleges two injuries to support its claim of standing. First, Plaintiff asserts that the conduct by Defendants "leaves Plaintiff Nation exposed to the dangers of existing nuclear arsenals and the real probability that additional States will develop nuclear arms." (Compl. at ¶ 92.) Such a generalized and speculative fear of the possibility of future use of nuclear weapons does not constitute a concrete harm unique to Plaintiff required to establish injury in fact. *See Pauling v. McElroy*, 278 F.2d 252, 254 (D.C. Cir. 1960) (holding that plaintiffs lacked standing where they sought to enjoin nuclear testing because the alleged injury was shared with "all mankind" and "in common with people generally."); *see also Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988).

Plaintiff also asserts injury in the deprivation of their benefit of the bargain encompassed by the terms of the Treaty. (Compl. at ¶ 92.) Plaintiff contends that, as a signatory nation, it has standing to enforce the Treaty's provisions. *See Jamaica v. United States*, 770 F. Supp. 627, 630 n.6 (M.D. Fla. 1991) ("As a contracting party to the treaty, Jamaica has standing to assert its claim that the treaty has been violated."). Plaintiff contends that it has standing to sue for breach and its injury would be redressed by the United States adherence to its Treaty obligations. Plaintiff argues that the Treaty creates rights and duties and the breach of the duties is a violation of the individual rights of the signatories conferred by virtue of the Treaty's terms. *See Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F3d. 614, 617 (D.C. Cir. 2006) ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute.").

Even assuming that breaches of a contract confer standing on parties to the contract, and that international agreements should be considered contracts, Plaintiff fails to account for the fact that the Court cannot mandate specific performance as a remedy or grant redress for its alleged injury. *See, e.g., Canadian Lumber Trade Alliance v. United States*, 30 C.I.T. 391, 418-420 (Ct. Int'l Trade 2006). Even if the Court could mandate specific performance on the part of the Defendants, the relief Plaintiff seeks is not attainable. *See, e.g., Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982) (holding that plaintiff lacked standing where the relief sought

4

would not redress the injuries alleged). The Court finds that the requested relief – that the United States negotiate in good faith on effective measures relating to nuclear disarmament – is insufficient to establish standing because the Court is unable to fashion any meaningful decree. *See id.* (citing *Greater Tampa Chamber of Commerce v., Goldschmidt*, 627 F.2d 258, 263-64 (D.C. Cir. 1980) (invalidation of international executive agreement will not redress injury because act of foreign sovereign necessary for relief)). Here, the requested relief does not account for the participation of all of the nuclear and non-nuclear states that are parties to the Treaty but are not parties to this suit. The Treaty does not create, and the Court may not enforce, a bilateral obligation between the United States and the Marshall Islands. The injury Plaintiff claims cannot be redressed by compelling the specific performance by only one nation to the Treaty.

Furthermore, the Court finds that the claim for relief raises a fundamentally non-justiciable political question which is constitutionally committed to the political branches of government. Requiring the Court to delve into and then monitor United States policies and decisions with regard to its nuclear programs and arsenal is an untenable request far beyond the purview of the federal courts. Having no judicially manageable standards by which to adjudicate the United States' alleged breach of the international agreement, the Court finds the political question better suited to the vagaries of the political branches of government and diplomatic channels.

**B.     Political Question.**

Even assuming that Plaintiff could establish standing to sue, the Court finds that the question presented raises a fundamentally non-justiciable political question. The political question inquiry "proceeds from the age-old observation of Chief Justice Marshall that '[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.'" *Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005) (quoting *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 170 (1803)). The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). The doctrine "excludes from judicial review those

controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).

The political question doctrine provides that a federal court having jurisdiction over a dispute should nevertheless decline to adjudicate it on the ground that the cases raises questions which should properly be addressed by the political branches of government. *See Baker*, 369 U.S. at 210. The most appropriate case for applicability of the political question doctrine concerns the conduct of foreign affairs. *Id.* at 211. However, not every case involving foreign affairs or foreign relations raises a political question. In determining whether a particular matter raises political questions which the Court must decline to address, the Court must examine the following factors; "(1) a demonstrable constitutional commitment of the issue to a coordinate political department; (2) the lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of making a decision without first making a policy determination of the type clearly outside judicial discretion; (4) the court's inability to resolve the issue without expressing lack of respect to the coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potential for embarrassment from multifarious pronouncements by various departments on one question." *Zivkowich v. Vatican Bank*, 242 F. Supp. 2d 659, 665 (N.D. Cal. 2002) (citing *Baker*, 369 U.S. at 217). If any one of these factors is "'inextricable from the case,' the court should dismiss the case as nonjusticiable because it involves a political question." *Id*.

Here, the Court finds that Plaintiff's claims relate to "the foreign affairs function, which rests with the exclusive province of the Executive Branch under Article II, section 2 of the United States Constitution." *Earth Island Institute v. Christopher*, 6 F.3d 648, 652 (9th Cir. 1993). Plaintiff seeks to have this Court interpret the Treaty to enforce an obligation for the Executive to initiate discussions with foreign nations. This request would violate "the separation of powers, and this court cannot enforce it." *Id.* In *Earth Justice*, the Ninth Circuit addressed the request by plaintiff to enforce a statute that required the Secretary of State to initiate discussions with foreign countries over the protection of sea turtles. The court held that

the question presented was not justiciable and rejected the contention that the "lawsuit merely asks the district court to review and interpret congressional legislation." *Id.* at 653.[1] Similarly, here, the Court is not empowered by the Constitution to require the Executive to initiate discussions with foreign nations over the reduction in its nuclear armaments or programs. The authority to negotiate with foreign nations is expressly committed to the Executive, a coordinate political department. *See Zivkowich*, 242 F. Supp. 2d at 665.

Further, the Court finds that it lacks any judicially discoverable and manageable standards for resolving the dispute raised by Plaintiff in this matter. Plaintiff requests that this Court issue an injunction directing the Executive to take "all steps necessary to comply with its obligations under Article VI of the Treaty within one year of the Judgment, including by calling for and convening negotiations for nuclear disarmament in all its aspects." (Compl. at ¶ 23.) What constitutes good faith efforts to pursue negotiations on effective measures relating to cessation of the nuclear arms race are determinations for the political branches to make, using the panoply of resources and expertise it has accumulated in the area of international security as well as diplomatic and military affairs. Plaintiff's request that such efforts be effectuated within one year is arbitrary and fails to take into consideration the activities and willingness of other nations which are also signatories to the Treaty. The Court finds that it lacks the standards necessary to fashion the type of injunctive relief Plaintiff seeks. Accordingly, the Court finds it

---

[1] Contrary to Plaintiff's contention, the Court finds this precedential holding binding, regardless whether the Ninth Circuit also addressed the constitutionality of the statute at stake in the case.

7

must dismiss this case as nonjusticiable because it involves a political question. *See Zivkowich*, 242 F. Supp. 2d at 665.[2]

**C.    Venue and Laches.**

In their motion to dismiss, Defendants argue that venue is improper in this district. However, at oral argument, the parties agreed that the Court has the authority to decide the threshold jurisdictional issues of standing and justiciability, thus mooting the venue challenge. Accordingly, as the Court has determined that the case must be dismissed for lack of standing and under the political questions rubric, the Court does not reach the issue of venue. In addition, the Court finds it unnecessary to address the additional claims that the case is barred by laches.

---

[2] The Court finds that the issue of whether the Treaty is self-executing or provides a private right of action is irrelevant to the enforcement by a state-party that is a signatory to the Treaty. However, because the Court finds the case before it is non-justiciable as a matter of law, and the Treaty itself is silent as to the proper enforcement mechanism and does not contemplate the participation of the federal courts, the Court finds that enforcement shall depend upon the interest and honor of the parties to the Treaty. Indeed, the Treaty is "primarily a compact between independent nations," and as such, [i]t ordinarily depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it." *Medellin v. Texas*, 552 U.S. 491, 505 (2008) (quoting *Head Money Cases*, 112 U.,S. 580, 598 (1884)). "If these [interests] fail, its infraction becomes the subject of international negotiations and reclamations . . . . It is obvious that with all this the judicial courts have nothing to do and can give no redress." *Id.*

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. A separate judgment shall issue and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: February 3, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

9